UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW DILL,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHCOAST VISITING NURSE ASSOCIATION, INC.,<br><br>Defendant. | *<br>*<br>*<br>*<br>*<br>*  Civil Action No. 1:25-cv-10603-IT<br>*<br>*<br>*<br>*<br>* |

MEMORANDUM & ORDER

March 2, 2026

TALWANI, D.J.

Plaintiff Andrew Dill brings this action against Southcoast Visiting Nurse Association, Inc. ("Southcoast"),[1] his former employer, alleging that Southcoast took retaliatory action against Dill when he declined to receive the COVID-19 vaccine in 2021. In its Motion to Dismiss Plaintiff's Complaint [Doc. No. 6], Defendant Southcoast seeks dismissal of Dill's Complaint [Doc. No. 1] pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the court GRANTS Southcoast's Motion to Dismiss [Doc. No. 6].

**I.  Background**

As set forth in the Complaint [Doc. No. 1], Dill alleges the following:

---

[1] The Complaint [Doc. No. 1] identifies Defendant as "Southcoast Health Network, Inc." Id. ¶¶ 3–4. Southcoast Visiting Nurse Association, Inc., responded to the Complaint [Doc. No. 1], stating that it was the "subsidiary of Southcoast Health System, Inc." that employed Plaintiff and requesting that the court *sua sponte* correct Defendant's name. Mot. to Dismiss 1 n.1 [Doc. No. 6]. Dill does not contest that "Southcoast Visiting Nurse Association, Inc." is the correct legal name of the Defendant. See Opp'n 1 n.1 [Doc. No. 8]. Accordingly, the court substitutes Southcoast Visiting Nurse Association, Inc., for Southcoast Health Network, Inc., as the Defendant in this matter.

Southcoast employed Dill as a physical therapy assistant for five years. Id. ¶ 8. In October 2021, in response to the COVID-19 pandemic, Southcoast implemented a vaccination policy for all employees (the "vaccination policy"), pursuant to which all employees were required, as a condition of their employment, to be vaccinated against influenza and COVID-19 or be granted a medical or religious exemption. See id. ¶¶ 14–15.

Dill objected both to receiving the COVID-19 vaccine and undergoing COVID-19 testing "based on his sincerely held religious beliefs." Id. ¶ 2. Dill "submitted a timely request for a Religious Accommodation" to Southcoast, including a letter from the pastor of Dill's religious congregation, dated October 11, 2021, that "explain[ed] Dill['s] sincerely held religious beliefs which caused Dill conflict and inability to accept the vaccine[.]" Id.; see Compl., Ex. A, at ECF 2 [Doc. No. 1-3].

On an unspecified date, Southcoast "instructed" Dill that he "would be placed on unpaid leave if he failed" to receive the COVID-19 vaccine by October 28, 2021. Compl. ¶ 17 [Doc. No. 1]. On October 29, 2021, Southcoast issued a memorandum to Dill, informing him that "based on [Southcoast's] review of [Dill's] exemption request, including any supporting materials, [his] request for a religious exemption from the vaccine mandate has been denied." Compl., Ex. A, at ECF 3 [Doc. No. 1-3]. In its explanation of the decision, Southcoast asserted that it "made no determination regarding the sincerity of [Dill's] religious beliefs[.]" Id. The memorandum stated further that Southcoast "determined that granting . . . an exemption pose[d] an undue hardship on Southcoast" because Dill's role required him to "care for or interact with" other employees, "vulnerable and/or high-risk patients, and/or community members, many of whom have expressed concerns about coming into contact with unvaccinated individuals." Id.

The October 29 memorandum informed Dill that the denial of his exemption request was a final decision and that he could not appeal the denial or otherwise seek adjustment from his manager. See id. Southcoast included the following language in the memorandum: "As a reminder, failure to become fully vaccinated by November 15th will result in corrective action up to and including termination of your employment for non-compliance with Southcoast's mandatory COVID-19 vaccination policy." Id. The memorandum also stated that the denial of Dill's exemption request was "for the 2021 season and should not be construed as a denial for any future vaccination season or future vaccine mandate." Id.

Southcoast placed Dill "on unpaid time off" and, three days later, on "unpaid leave." Compl. ¶ 17 [Doc. No. 1]. Southcoast also informed Dill "that he could not collect unemployment." Id. ¶ 18 While on "unpaid leave[,]" Dill "lost his place to live" in Fall River, Massachusetts, was "forced" to move to Florida, and needed to deploy "a year of 401k savings" to pay for more than $10,000 in relocation costs. Id. ¶¶ 17, 19–20. Dill also "experience[d] great mental anguish in mind and body" and, upon moving to Florida, was no longer able to participate in his "dancing community life in New Bedford, Fall River, Boston[,] and Providence[,] Rhode Island." Id. ¶¶ 20–21.

On March 21, 2022, Dill filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). See id. ¶ 25.[2] In the Charge, Dill did not assert that his employment with Southcoast was terminated. See Compl., Ex. B, at ECF 2 [Doc. No. 1-4]. Instead, Dill alleged that, in October 2021, his request for a religious exemption from Southcoast's vaccination requirement was denied and he was placed on unpaid leave. See id. ("I

---

[2] The Charge of Discrimination notes that it was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). See Compl., Ex. B, at ECF 2 [Doc. No. 1-4].

3

was not terminated but I am still on Unpaid leave because I am unable to receive the Covid-19 vaccination because of my religious beliefs."). Dill reported in the Charge that the dates on which Southcoast discriminated against him were October 27, 2021, at the earliest, and October 28, 2021, at the latest. Id.

## II. Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 548 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

## III. Discussion

Dill's two-count Complaint [Doc. No. 1] alleges that (1) Southcoast, acting under color of law, violated Dill's right to free exercise of religion under the First Amendment to the U.S. Constitution, in violation of 42 U.S.C. § 1983 ("Section 1983") (Count I); and (2) Southcoast violated Dill's deeply held religious beliefs by suspending him without pay, in "violation of [Mass. Gen. L.] Chapter 151 and Title VII" (Count II). Id. ¶¶ 27–38.

As to Count I of Dill's Complaint [Doc. No. 1], Southcoast asserts that dismissal is warranted where Dill alleges no state action on the part of Southcoast and, in any event, pleaded insufficient facts in support of the contention that Southcoast inhibited Dill's ability to freely

practice his religion. Mem. ISO Mot. to Dismiss 1 [Doc. No. 7]. With respect to Count II, Southcoast seeks dismissal where Dill purportedly failed to timely file suit under federal or state law. Id.

    A.    <u>Dill's Section 1983 Claim</u>

Under Section 1983, a civil suit may be brought against a party who, acting under color of law, violates an individual's federally protected rights. <u>See</u> 42 U.S.C. § 1983. "A claim under section 1983 has two essential elements. First, the challenged conduct must be attributable to a person acting under color of state law." <u>Soto v. Flores</u>, 103 F.3d 1056, 1061 (1st Cir. 1997). "[S]econd, the conduct must have worked a denial of rights secured by the Constitution or by federal law." <u>Id.</u>

Dill's <u>Complaint</u> [Doc. No. 1] does not contain any facts even tenuously suggesting Southcoast's implementation of its vaccine policy was "fairly attributable to the State." <u>Lugar v. Edmondson Oil Co., Inc.</u>, 457 U.S. 922, 937 (1982). Where Dill's only allegation to this effect is his conclusory statement that "Defendant, at all times relevant to this action, was acting under color of state law[,]" Compl. ¶ 28 [Doc. No. 1], the court finds that Dill has not put forth sufficient factual allegations for Count I to survive a motion to dismiss. <u>See</u> <u>Douglas v. Hirshon</u>, 63 F.4th 49, 55 (1st Cir. 2023) (when evaluating a motion to dismiss, "we do not credit conclusory legal allegations or factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture" (quotations omitted)); <u>Garcia-Catalan v. United States</u>, 734 F.3d 100, 103 (1st Cir. 2013) ("[T]he court must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." (quotation omitted)).

5

In his Opposition [Doc. No. 8], Dill relies on factual allegations regarding Southcoast's purported state action that he failed to present in his Complaint [Doc. No. 1]. Although "assertions in an opposition motion are not the equivalent of factual pleadings[,]" Steele v. Turner Broad. Sys., Inc., 607 F. Supp. 2d 258, 263 (D. Mass. 2009), the court will briefly address Dill's contention that Southcoast implemented the vaccination policy at the direction of the federal government. See Opp'n 3 [Doc. No. 8]. As support for this assertion, Dill relies on Southcoast's receipt of federal funding and the extensive federal regulation to which Southcoast, as a healthcare provider, is subject. See id. at 3–5.

"It is 'only in rare circumstances' that private parties can be viewed as state actors." Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 4 (1st Cir. 2005) (quoting Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)). Courts in the First Circuit employ three tests to determine whether a private party can be characterized as a state actor for the purposes of a Section 1983 claim: "the state compulsion test, the nexus/joint action test, and the public function test." Estades-Negroni, 412 F.3d at 3, 5. Under each of these tests, Dill's characterization of Southcoast as a state actor fails.

First, "[u]nder the state compulsion test, a private party is fairly characterized as a state actor when the state 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State.'" Id. at 5 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). The alleged "encouragement" from the federal government asserted here is Southcoast's receipt of Medicare and Medicaid funding. See Opp'n 3 [Doc. No. 8]. Dill avers that, as a recipient of such funds, Southcoast "is mandated to follow the policy of [the Centers for Medicare & Medicaid Services] and is subject to fines for noncompliance." Id. But a private entity's "receipt of federal funding is

6

insufficient to transform a private actor into a state actor." McEntee v. Beth Israel Lahey Health, Inc., 685 F. Supp. 3d 43, 51 (D. Mass. 2023); see Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258 (1st Cir. 1994) (receipt of Medicare, Medicaid, and funds available under the Hill-Burton Act "insufficient to establish that a hospital or other entity acted under color of state law"). Accordingly, Dill's allegations do not satisfy the state compulsion test.

Second, under the nexus/joint action test, "a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in [the challenged activity].'" Estades-Negroni, 412 F.3d at 5 (quoting Bass v. Parkwood Hosp., 180 F.3d 234, 242 (5th Cir.1999)) (alteration in original). Dill asks this court to find a nexus between Southcoast and the federal government both by virtue of Southcoast's federal funding, described supra, and Southcoast's purported "attempt to garner the support and favor of the Executive Branch" by electing to impose a vaccine policy on Southcoast employees. Opp'n 5 [Doc. No. 8]; see id. (asserting that the federal government "created a 'sword of Damocles'" to facilitate vaccination uptake, under which individuals were effectively asked to "[e]ither get vaccinated or suffer the extreme financial consequences of losing [their] job[s]"). He suggests that the federal government, being unable to pass legislation mandating vaccination against COVID-19, charged private companies like Southcoast with the responsibility of inducing the public to receive the vaccine. Id. at 4. Dill makes this argument without citation or sufficient reference to factual allegations.

But, even setting aside the deficiencies in Dill's allegations, Southcoast's enactment of a vaccination policy, whether it was done to "comply with state regulations" or to ingratiate Southcoast to the federal government, "would not necessarily render the defendant [a] state

actor[].” McEntee, 685 F. Supp. at 51 (citing Jackson v. Metro. Edison Co., 419 U.S. 345, 350 (1974)). Where Dill asserts only generic arguments about federal funding and regulations, as described supra, his claim falters in its attempt to satisfy the nexus/joint action test by virtue of the parallels between the government's position on vaccination and that of Southcoast in the midst of a global pandemic. See Tynecki v. Tufts Univ. Sch. of Dental Med., 875 F. Supp. 26, 33 (D. Mass. 1994) (“[E]xtensive regulation and financial aid, without more, is not sufficient to elevate defendants' conduct to the level of state action.”).

Finally, under the public function test, “a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been traditionally 'the exclusive prerogative of the State.'” Estades-Negroni, 412 F.3d at 5 (quoting Blum, 457 U.S. at 1005). The public function test “is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities.” Cruz-Arce v. Mgmt. Admin. Servs. Corp., 19 F.4th 538, 544 (1st Cir. 2021) (quoting Perkins v. Londonderry Basketball Club, 196 F.3d 13, 18–19 (1st Cir. 1999)). “While many functions have been traditionally performed by governments, very few have been exclusively reserved to the State.” Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 158 (1978).

Dill asserts that Southcoast's implementation of its vaccination policy was a public function. Opp'n 3–6 [Doc. No. 8]. To the contrary, vaccination and public health are not areas “traditionally exclusively reserved to the State[.]” Wines v. President and Fellows of Harvard Coll., 804 F. Supp. 3d 278, 290 (D. Mass. 2025) (quoting Cruze-Arce, 19 F.4th at 545), appeal docketed, No. 25-2015 (1st Cir. Oct. 29, 2025). Accordingly, policies implemented by private entities in these domains typically do not meet the public function test. See id.; Devitt v. Sanofi-Aventus US, LLC, 793 F. Supp. 3d 245, 260–61 (D. Mass. 2025) (finding that a privately-owned

8

healthcare and pharmaceutical company's implementation of a COVID-19 vaccine mandate did not meet the public function test); Bazinet v. Beth Israel Lahey Health, Inc., No. 1:23-CV-11056-AK, 2023 WL 9687614, at *5 (D. Mass. Dec. 22, 2023) ("[V]accine mandates have not been exclusively executed by the state."), vacated on other grounds, 113 F.4th 9 (1st Cir. 2024); Manning v. Whole Foods Mkt. Grp., Inc., No. 21-cv-10833-ADB, 2022 WL 194999, at *4–5 (D. Mass. Jan. 21, 2022) (declining to find that private entity performed public function when implementing internal policy requiring individuals to wear masks in its stores "to protect the health and safety of its customers and staff"). Southcoast's implementation of its vaccination policy is likewise insufficient to satisfy the public function test.

Accordingly, Southcoast's Motion to Dismiss [Doc. No. 6] is GRANTED as to Count I of Dill's Complaint [Doc. No. 1].

B.     Count II: Violation of Title VII & M.G.L. c. 151B

Southcoast asserts that Dill, after receiving the November 2022 EEOC Notice, failed to file this Complaint [Doc. No. 1] within the time periods specified under Title VII and Mass. Gen. L. c. 151B, respectively.

*1. Dill's Title VII Claim*

To file a Title VII claim in federal court, an employee must first exhaust the available administrative remedies. See Franceschi v. U.S. Dep't of Veterans Affs., 514 F.3d 81, 85 (1st Cir. 2008). The employee initiates the process by filing an administrative charge before the EEOC. See id.;42 U.S.C. § 2000e-16(c). After filing the charge, the employee "may sue in federal court only if the EEOC dismisses the administrative charge, or if it does not bring civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge." Franceschi, 514 F.3d at 85 (citing 42 U.S.C. § 2000e–5(f)(1)).

In either scenario, the EEOC must send the employee notice "in the form of what is known as a right-to-sue letter." Id.; see 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28(e)(1) ("The notice of right to sue shall include authorization to the aggrieved person to bring a civil action under title VII . . . within 90 days from receipt of such authorization[.]"); Jorge v. Rumsfeld, 404 F.3d 556, 564 (1st Cir. 2005). Upon receipt of this notice, the employee has ninety days to file a complaint in federal court. See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009) (citing 42 U.S.C. § 2000e-5(f)(1)). The ninety-day limitation is strictly construed, and "the action is time-barred" if the employee "does not bring suit within the prescribed 90-day period." Loubriel v. Fondo del Seguro del Estado, 694 F.3d 139, 142 (1st Cir. 2012); see Rice v. New England Coll., 676 F.2d 9, 10 (1st Cir. 1982) ("In the absence of a recognized equitable consideration, the court cannot extend the [ninety-day] limitation period by even one day. . . That defendant was not prejudiced by the delay is immaterial." (citations omitted)).

Here, Dill's Complaint [Doc. No. 1] alleges that he timely filed charges with the MCAD, see Compl. ¶ 25 [Doc. No. 1]. The Charge of Discrimination attached to Dill's Complaint [Doc. No. 1] states that it was cross-filed with the EEOC. See Compl., Ex. B, at ECF 2 [Doc. No. 1-4]. The Complaint [Doc. No. 1] is silent, however, as to the receipt of a right-to-sue letter from the EEOC, and Dill's Opposition [Doc. No. 8] does not dispute Southcoast's contention that Dill received his right-to-sue letter from the EEOC in November 2022. See Mem. ISO Mot. to Dismiss, Ex. 2, at ECF 2 [Doc. No. 7-2].

Where Dill did not file the instant Complaint [Doc. No. 1] until March 13, 2025—well beyond the period permitted by law, see Loubriel, 694 F.3d at 142—the court finds that, as to

10

Dill's Title VII claim in Count II of his Complaint [Doc. No. 1], Southcoast's Motion to Dismiss [Doc. No. 6] is GRANTED as unopposed.

  2. *Dill's Mass. Gen. L. c. 151B Claim*

Count II of Dill's Complaint [Doc. No. 1] also alleges that Southcoast violated Dill's rights under Mass. Gen. L. c. 151B, Massachusetts' statutory corollary to Title VII (the "151B claim"). "The law is well settled that a civil action under 151B must be filed within three years of the alleged wrongful act." Abraham, 553 F.3d at 117 (citing M.G.L. c. 151B, § 9). Southcoast seeks dismissal of the 151B claim as untimely for having been filed outside of this three-year period. See Mem. ISO Mot. to Dismiss 1 [Doc. No. 7].

Dill argues that his Mass. Gen. L. c. 151B claim should be permitted to go forward under the "discovery rule." Opp'n 10 [Doc. No. 8]. Under that rule, the statute of limitations for a particular cause of action does not begin to run until the plaintiffs know, or should have known, that [they] ha[ve] been harmed by the defendant's conduct." Silvestris v. Tantasqua Reg'l Sch. Dist., 446 Mass. 756, 766, 847 N.E.2d 328 (Mass. 2006). But the discovery rule is not without limits, as plaintiffs "simply must know that [they] 'sustained an appreciable harm as a result of the [defendant's] conduct'" for the statutory period to run. RTR Techs., Inc. v. Helming, 707 F.3d 84, 90 (1st Cir. 2013) (quoting Williams v. Ely, 423 Mass. 467, 473, 668 N.E.2d 799 (Mass. 1996)).

Dill asserts that he did not realize Southcoast "was not going to allow him to work and that he was constructively terminated" until March 21, 2022. Compl. ¶ 25 [Doc. No. 1]; see Compl., Ex. B, at ECF 2 [Doc. No. 1-4]. But Dill knew he was on unpaid leave—an appreciable harm in itself—almost six months prior, see Compl. ¶¶ 17, 25 [Doc. No. 1], and knew or should have known that he would sustain the further harm of not being allowed to return to work at Southcoast unless he was vaccinated. See id.; Compl., Ex. A, at ECF 3 [Doc. No. 1-3].

In his Charge of Discrimination, Dill alleged that the "earliest" date on which "discrimination took place" was October 27, 2021, and the "latest" date of occurrence was October 28, 2021. Compl., Ex. B, at ECF 2 [Doc. No. 1-4]. In his Complaint [Doc. No. 1], Dill likewise asserted that "Southcoast instructed [Dill] that he would be placed on unpaid leave if he failed to have a covid [sic] shot experimental vaccine by October 28th. He was placed on unpaid time off then 3 days later unpaid leave." Id. ¶ 17. And Southcoast's October 29, 2021 memorandum specifically informed Dill that "failure to become fully vaccinated by November 15th [would] result in corrective action up to and including termination of your employment." Compl., Ex. A, at ECF 3 [Doc. No. 1-3] (emphasis added). Dill therefore knew by October 29, 2021, that he had been placed on unpaid leave and could be terminated for failure to receive the vaccine. See, e.g., Lee v. Howard Hughes Med. Inst., 607 F. Supp. 3d 52 (D. Mass. 2022) (finding that plaintiff's Mass. Gen. L. c. 151B claim was time-barred where "warning signs abounded" as to alleged pay discrimination, including an "email informing her that she would be receiving a raise due to the review that [her employer] had conducted concerning pay as it related to gender and seniority").

Accordingly, Dill needed to file suit as to his Mass. Gen. L. c. 151B claim no later than October 29, 2024. See M.G.L. c. 151B, § 9. Where Dill failed to do so, Southcoast's Motion to Dismiss [Doc. No. 6] is also GRANTED insofar as it seeks dismissal of Dill's Mass. Gen. L. c. 151B's claim in Count II of the Complaint [Doc. No. 1].

### IV.     Conclusion

For the foregoing reasons, Southcoast's Motion to Dismiss Plaintiff's Complaint [Doc. No. 6] is GRANTED. Dill's Complaint [Doc. No. 1] is DISMISSED.

IT IS SO ORDERED.

March 2, 2026                                         /s/ Indira Talwani
                                                      United States District Judge

13